**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C.

OCT 2 4 2003

LUTHER D. ꞏꞏꞏ. ꞏ. ꞏ.erk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PRICILLA A. LEWIS, As Administratrix of )
the Estate of Michael S. Lewis; PRICILLA )
A. LEWIS as Mother and Natural Guardian )
of Brett M. Lewis and Dylan M. Lewis, )
Minor Children of Decedent Michael S. )
Lewis and Melissa A. Wegner, Mother and )
Natural Guardian of Hunter A. Wegner, )
Minor Child of Decedent Michael S. Lewis, )
                             )
     Plaintiffs, )
                             )
vs.                       )
                             )
FORD MOTOR COMPANY; )
BRIDGESTONE/FIRESTONE, INC. AND )
BRIDGESTONE/FIRESTONE NORTH )
AMERICAN TIRE, LLC )
                             )
     Defendants. )
                             )

CIVIL ACTION FILE NO:

**1 03 CV-3245**

**CAP**

## <u>NOTICE OF REMOVAL</u>

     COMES NOW Defendant Bridgestone/Firestone North American Tire, LLC, successor by merger to Bridgestone/Firestone, Inc. ("Firestone"), and respectfully files this notice of removal from the State Court of Cobb County, Georgia to the United States District Court for the Northern District of Georgia, Atlanta Division, and shows the Court as follows:

<u>FORMS RECEIVED</u>
Consent To US Mag. ____
Pretrial Instructions ____
Title VII NTC

1.

This action was commenced on September 15, 2003, by the filing of an original summons and complaint in the State Court of Cobb County, Georgia. A true and correct copy of the complaint is attached hereto as Exhibit "A." In the complaint, Pricilla A. Lewis, as the Administratrix of the Estate of Michael Lewis, and as the Mother and Natural Guardian of Brett M. Lewis and Dylan M. Lewis, Minor Children of Decedent Michael S. Lewis, and Melissa A. Wegner, Mother and Natural Guardian of Hunter A. Wegner, Minor Child of Decedent Michael S. Lewis ("Plaintiffs") seek recovery against defendants for damages arising from the death of Michael Lewis ("Lewis"), which allegedly resulted from a motor vehicle accident that occurred on or about November 12, 2001.

2.

Plaintiffs' complaint alleges that Lewis was, at the time of the accident which is the subject of the complaint, operating a 1997 Model E-350 Ford Super Club Wagon XL allegedly equipped with Firestone Steel Tex R-40 tires.

3.

Plaintiffs assert a variety of allegations against defendants Firestone and Ford Motor Company ("Ford"). Specifically, Plaintiffs allege that Firestone and Ford were negligent in the design, manufacture, testing, monitoring, and warnings

2

surrounding the vehicle and tire, in addition to claims based on strict liability. Plaintiffs also allege that the defendants are liable for punitive damages.

4.

This removal is timely under 28 U.S.C. § 1446(b) because it has been filed within 30 days after receipt by Firestone of Plaintiffs' initial pleading setting forth their claims for relief .

5.

Plaintiffs are alleged to be a citizens and residents of the State of Georgia.

6.

Defendant Ford is and was at the commencement of this action a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Michigan.

7.

Defendant Firestone is and was at the commencement of this action a Delaware corporation with its principal place of business in the State of Tennessee.

8.

Defendant Firestone filed an answer to the complaint on October 23, 2003. A true and correct copy of Firestone's Answer is attached hereto as Exhibit "B." Defendant Ford has not filed an answer as of this date.

9.

Plaintiffs' complaint includes a demand for judgment in an unspecified amount. Plaintiffs allege damages for the following: 1) the full value of the life of Lewis; 2) pre-impact fright and shock, conscious pain and suffering experienced by Lewis; 3) medical and funeral damages incurred by Lewis; and 4) attorneys' fees and costs of litigation. Plaintiffs also seek punitive damages from the defendants. The amount in controversy exclusive of interest and costs between Plaintiffs and the defendants exceeds the sum of $75,000.00.

10.

As between Plaintiffs and the defendants, there exists complete diversity of citizenship under 28 U.S.C. § 1332(a).

11.

Defendant Ford consents to this removal. *See* Consent to Removal, filed herewith.

12.

Notice of removal should be filed within thirty days after service of the initial pleading setting forth the claim for relief upon which the action is based. 28 U.S.C. § 1446(b). In this case, Defendant Firestone was served on October 7, 2003, and thus notice of removal is timely.

13.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441, as amended, in that the alleged cause of action brought against the defendants is a suit between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.

Attached hereto is a copy of all pleadings, process and orders entered to date in this action.

15.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the State Court of Cobb County, Georgia, and is being served on all parties to this lawsuit.

WHEREFORE, Defendant Firestone prays that this Court take cognizance of and jurisdiction over this claim from the State Court of Cobb County, and that this action shall proceed as removed under this Court's jurisdiction pursuant to 28 U.S.C. § 1332(a).

Respectfully submitted, this ___24ᵗʰ___ day of October, 2003.

HOLLAND & KNIGHT LLP

Alfred B. Adams, III
Georgia Bar No. 002300
Caroline Johnson Tanner
Georgia Bar No. 392580
Dax Lopez
Georgia Bar No. 457888

2000 One Atlantic Center
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3400
(404) 817-8500                    Attorneys for Defendant Bridgestone/
(404) 881-0470 Fax                Firestone North American Tire, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing **Notice of Removal** on all parties to this action, or their attorney of record, by placing it in the United States Mail, first class postage prepaid, and properly addressed as follows:

Dennis T. Cathey, Esq.  
David A. Sleppy, Esq.  
Cathey & Strain  
P.O. Box 689  
Cornelia, Georgia 30531  

Jeffery S. Malcom, Esq.  
Jeffery S. Malcom, P.C.  
532 East Howell Street  
P.O. Box 861  
Hartwell, Georgia 30643  

Attorneys for Plaintiffs

F. Faison Middleton, IV, Esq.  
Jeremy M. Moeser, Esq.  
McKenna Long & Aldridge LLP  
303 Peachtree Street, Suite 5300  
Atlanta, Georgia 30308  

Attorneys for Defendant Ford Motor Company

This _____ day of October, 2003.

Dax E. Lopez  
Georgia Bar No. 457888  

Attorneys for Defendant Bridgestone/ Firestone North American Tire, LLC

# 1309308_v1

7



# EXHIBIT / ATTACHMENT



**(To be scanned in place of tab)**

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

Pricilla A. Lewis, As Administratrix
of the Estate of Michael S. Lewis;
Pricilla A. Lewis as Mother and Natural
Guardian of Brett M. Lewis and Dylan M. Lewis,
Minor Children of Decedent Michael S. Lewis
and Melissa A. Wegner, Mother and Natural
Guardian of Hunter A. Wegner, Minor Child
of Decedent Michael S. Lewis

PLAINTIFF

CASE NO. **2003A 8679-1**

**$78 DEPOSIT PAID**

Vs

Ford Motor Company;
Bridgestone/Firestone, Inc.
and Bridgestone/Firestone
North America Tire, LLC

DEFENDANT

| TYPE OF SUIT: | | AMOUNT OF SUIT | |
|---|---|---|---|
| Account | ☐ | Principal | $ |
| Contract | ☐ | Interest | $ |
| Note | ☐ | Attys. Fees | $ |
| Tort | ☒ | Court Costs | $ 0.00 |

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the CLERK of said court and serve upon the Plaintiff's attorney or upon Plaintiff if no attorney, to wit, whose name and address is:

Dennis T. Cathey
David A. Sleppy
Cathey & Strain
P.O. Box 689
Cornelia, GA 30531
706-778-2601

Jeffery S. Malcom
Jeffery S. Malcom, P.C.
P.O. Box 861
Hartwell, GA 30643
706-376-6500

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. NOTE: Any corporate party served must be represented by a licensed attorney at law. (see Eckles v. Atlanta Technology Group, 267 Ga. 801)

This _____ 9-23-02 _____
(Date)

_____
Clerk
State Court of Cobb County

**12 East Park Square, Marietta, Georgia 30090-9632    (770) 528-1220    Building B, First floor-Civil Division**

A:\general\summons.doc

6-24-2002

IN THE STATE COURT FOR THE COUNTY
OF COBB, STATE OF GEORGIA

PRICILLA A. LEWIS, As               :
Administratrix of the Estate        :
of MICHAEL S. LEWIS;                :
PRICILLA A. LEWIS As Mother         :
and Natural Guardian of BRETT       :
M. LEWIS and DYLAN M. LEWIS,        :   CIVIL ACTION
Minor Children of Decedent          :
MICHAEL S. LEWIS and                :
MELISSA A. WEGNER, Mother and       :
Natural Guardian of HUNTER A.       :
WEGNER, Minor Child of Decedent     :
MICHAEL S. LEWIS                    :      **2003A 8679-1**
                                    :
        Plaintiffs                  :   FILE NO._____
                                    :
        VS.                         :
                                    :
FORD MOTOR COMPANY;                 :
BRIDGESTONE/FIRESTONE, INC.         :
and BRIDGESTONE/FIRESTONE           :
NORTH AMERICA TIRE, LLC.            :
                                    :
        Defendants                  :

## COMPLAINT FOR DAMAGES

Come now the Plaintiffs, by and through their undersigned counsel, and for their Complaint show the Court as follows:

### I. JURISDICTION AND PARTIES

1.

Plaintiff PRICILLA A. LEWIS is the Administratrix of the Estate of MICHAEL L. LEWIS, deceased, and is the mother and natural guardian of BRETT M. LEWIS and DYLAN M. LEWIS, the minor children of the decedent, MICHAEL L. LEWIS. She brings this action in her capacity as the legal representative of the decedent's estate and as mother and natural guardian of his minor children. Plaintiff is a resident of Elbert County, Georgia.

2.

Plaintiff MELISSA A. WEGNER is the mother and natural guardian of HUNTER A. WEGNER, the minor child of the decedent MICHAEL L. LEWIS and brings this action in her capacity as such. Plaintiff is a resident of McDuffie County, Georgia.

3.

Defendant FORD MOTOR COMPANY is incorporated in the State of Delaware and is authorized to transact business and does transact business in the State of Georgia and is subject to the jurisdiction and venue of this Court. This defendant may be served with process by service upon its registered agent for service of process in the State of Georgia, to-wit: Corporation Process Company, 180 Cherokee Street, N.E., Marietta, Georgia, 30060.

4.

Defendant BRIDGESTONE/FIRESTONE, INC. was at the time of the incident described herein, and still may be, a corporation organized under the laws of the State of Ohio and transacts business in the State of Georgia and is subject to the jurisdiction and venue of this Court. This Defendant may served with process by service upon its registered agent in the State of Ohio as follows: National Registered Agents, Inc., 145 Baker Street, Marion, Ohio, 43302.

5.

The Defendant BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC is a corporation organized under the laws of the State of Delaware and transacts business in the State of Georgia and is registered to do

-2-

business in the State of Georgia and is subject to the jurisdiction of this Court. The Defendant may be served with process by service upon its registered agent: National Registered Agents, Inc., 3671 Venture Drive, Suite 260, Duluth, Georgia, 30096.

## II. OPERATIVE FACTS

6.

On November 12, 2001, the decedent, MICHAEL S. LEWIS was a passenger in a 1997 Model E-350 Ford Super Club Wagon XL (VIN No. 1FBJS31S6VHA36563), commonly referred to as a "fifteen passenger van" (and sometimes referred to herein as "the subject van"). The vehicle was traveling westbound on Interstate 20 in Carroll County, Georgia.

7.

At the time of the incident complained of herein, the vehicle was equipped with a set of Firestone Steel Tex R40 steel-belted tires. The DOT number of the Firestone tire mounted on the subject van in the right rear position was VN11 B1C 0401.

8.

As the vehicle traveled in a westerly direction on Interstate Highway 20, the right rear tire sustained a tread separation the vehicle, thereafter swerved, yawed, fishtailed and entered the median of the roadway and rolled over repeatedly.

## III. LIABILITY OF FORD MOTOR COMPANY ("FMC")

### GENERAL ALLEGATIONS

9.

In the early 1970's FMC began testing and developing a large

-3-

passenger van which would ultimately become known as the Econoline Van. The Econoline Van was targeted for a 1975 model year introduction.

10.

In the latter 1970's FMC designed and developed an extended van model of the Econoline. Over succeeding years FMC designed, developed, tested, manufactured, marketed and sold a variety of Econoline 15 passenger vans.

11.

The 1997 model E-350 XL van has specific vehicle design parameters including weight distribution, stability index, narrow track, wheelbase, track width, suspension handling packages, extended rear overhang and tires that have known dynamic handling and rollover characteristics which affect the vehicle handling properties in emergency situations. These design parameters render the vehicle defective and unreasonably dangerous in foreseeable emergency situations.

12.

In the course of FMC's business, it designed, developed, tested, marketed and sold a series of 15 passenger Econoline vans all of which had similar specific design parameters to the 1997 Model E-350 XL van and all of which are similarly defective and unreasonably dangerous in emergency handling situations.

13.

In the course of its design and development of the 15

-4-

passenger Econoline vans, including the 1997 model year van, FMC did not conduct any established stability and handling limits tests on the vans similar to the limits handling tests on Ford pick-up trucks and sport utility vehicles.

14.

At all times pertinent, FMC knew that when 15 passenger vans including the subject van were heavily loaded, the center of gravity height would be significantly increased making the vehicle more top heavy and increasing the propensity to roll over in foreseeable steering maneuvers. FMC also knew that as more occupants and weight were added to 15 passenger vans including the subject van, the center of gravity moved rearward. This change in the center of gravity also increased the propensity of the vehicle to roll over.

15.

In the course of the design, development and testing of its 15 passenger vans, FMC did not properly design the vehicles for stability under readily foreseeable emergency driving conditions.

16.

FMC failed to engage in adequate and proper stability and handling testing in order to fully identify the defects associates with stability, handling and rollover propensity in the vehicle. Hence, FMC took no steps to correct the defects.

17.

FMC failed to conduct a proper Failure Mode and Effects Analysis in order to adequately identify and correct defects

-5-

associated with stability, handling and rollover propensity in its 15 passenger vans.

18.

At all times pertinent FMC was aware of the serious risk of injury or death associated with the rollover propensity of its 15 passenger vans including the 1997 E-350 XL van. FMC was aware of the need for stability limit testing related to stability, handling and rollover propensity.

19.

At all times pertinent and for a period of years before and since November 12, 2001, FMC claimed, in response to public concerns over hazards associated with 15 passenger vans, that its 15 passenger vans met and passed all of FMC's tests. FMC made these claims at the time it knew that its 15 passenger vans had not, in fact, met all of FMC's tests used to validate stability and handling in its passenger vehicles and other vehicles.

20.

Over the course of a number of years preceding November 12, 2001, and continuing since the date of the collision, FMC engaged in a pattern of concealment and deception aimed at hiding evidence of stability and handling tests, including both computer simulated and dynamic tests, which would demonstrate that FMC's 15 passenger vans including the 1997 E-350 XL van were defective and unreasonably dangerous and further proving that FMC was, at all times pertinent, aware of the defective and unreasonably dangerous nature of these vehicles.

-6-

21.

At all times pertinent, FMC knew that the design of its 15 passenger vans, including the 1997 E-350 XL van and its handling characteristics were such that these vehicles should only be operated by experienced drivers who understand and are familiar with the peculiar and dangerous handling and stability characteristics of the vans.

22.

At all times pertinent, FMC knew that many operators of its 15 passenger vans including the 1997 E-350 XL would not be familiar with the van's stability and handling characteristics and would not have the requisite experience or skill to operate the vehicle without unreasonable risk of injury or death to themselves and other occupants in the vehicle in the event of emergency steering maneuvers.

23.

At all times pertinent, FMC made false representations about the benefits, qualities and characteristics of its 15 passenger vans, including the 1997 E-350 XL van, relating to their safety and utility of transporting a large number of occupants, including up to 15 occupants. FMC's marketing and sales materials proclaim the van's ability to transport large groups of occupants and emphasized the benefits of its load carrying capacity.

24.

In the course of developing, testing and manufacturing its 15 passenger vans, FMC engaged in a practice of intentionally failing

-7-

to document test results which would have demonstrated the inherent instability of the 1997 E-350 XL van. FMC also destroyed other test records relating to stability and handling evaluations of its 15 passenger vans.

25.

Over a number of years before and since November 12, 2001, in the course of litigation over stability and handling defects in its 15 passenger vans, FMC engaged in a pattern of deception, destruction of evidence, hiding of evidence and refusal to respond fully and honestly to formal discovery requests related to stability and handling issues in civil actions around the United States. This conduct was intended to conceal the defective design of FMC's 15 passenger vans and was also intended to conceal FMC's knowledge of these defects from courts, litigants, and the public at large.

26.

At all times pertinent, FMC knowingly and intentionally concealed information concerning the characteristics, quality and safety of its 15 passenger vans including the 1997 E-350 XL van with the intent to induce consumers such as the purchaser of the subject van to buy, lease or rent FMC's 15 passenger vans.

27.

FMC's conduct was such that it consciously disregarded a substantial and unjustifiable risk that death could result from its conduct. FMC's conscious disregard of this risk may be inferred from both its knowledge and experience and from what a similarly

-8-

situated reasonable person would have understood about this risk.

28.

FMC through its agents and employees has repeatedly denied under oath that its Corporate Resistance to Rollover Guidelines dictate that Light Trucks including vans, pickups and sport utility vehicles (SUVs) remain stable under all foreseeable emergency avoidance maneuvers.

29.

FMC through its agents and employees has deliberately concealed from the public its Corporate Resistance to Rollover Guidelines adopted in 1987.

30.

FMC through its agents and employees has established a practice of concealing and destroying documents related to stability and handling issues of Ford Light Trucks including 15 passenger vans, pickups and SUVs.

31.

There is no substantive difference among the various generations of FMC E-350 15 passenger vans as it relates to issues of stability and handling and rollover resistance.

32.

FMC through its agents and employees established a pattern of making false statements both under oath and in the course of discovery in the civil litigation claiming that FMC had not conducted any ADAMS computer assisted design or computer assisted engineering modeling of a E-350 15 passenger van/wagon or of a E-

-9-

350 15 passenger van/super wagon.

33.

After years of such denials, several FMC employees finally admitted that an ADAMS model of an E-350 not only had been in existence for a number of years and that the ADAMS model was used to simulate stability and handling maneuvers between 1998 and 2001.

34.

FMC through its agents and employees has concealed or destroyed a series of sub-limit stability and handling tests conducted by Ford known as P6-101 tests which were conducted with E-350 15 passenger vans.

35.

In July 2002, in a hearing on Motions for Sanctions against Ford Motor Company brought in the <u>Johnson, et al v. Ford Motor Company</u>, the United States District Court for the Northern District of Illinois, Judge Robert W. Gettleman stated:

> To me it's very disturbing when you have obviously relevant corporate documents that cannot be found for some mysterious reason. The inference that you have to draw from that is that it was either recklessly destroyed or intentionally destroyed.

36.

In a sworn deposition given in a lawsuit involving the rollover of an FMC E-350 van, Ford engineer Donald Thrasher denied that any Ford test driver was involved in a rollover with any Ford Light Truck including an E-350 15 passenger van. In fact, in the course of conducting a sub-limit stability and handling test known as the P6-101 testing an FMC test driver was involved in rolling

-10-

over a Ford E-350 15 passenger van in approximately 1990. The test driver has admitted that not only was the van rolled over onto its side but that Mr. Thrasher was present during this rollover and observed it.

37.

On February 14, 2003, Judge Gettleman held hearings on additional Motions for Sanctions against FMC based upon claims of evidence of concealment and destruction by FMC and its agents and employees and also based upon a claimed pattern of deception and concealment regarding matters relating to stability and handling and rollover resistance of FMC's 15 passenger vans. In the course of that hearing, Judge Gettleman referred to the conduct of Ford and its agents and employees stating: "It almost boarders (sic) on criminal to be honest with you."

38.

FMC's conduct demonstrating a pattern of concealment and deception regarding important safety information relating to its 15 passenger vans is neither inadvertent nor is it an isolated series of incidents. For example, in March of 1999, agents and employees of FMC conspired with themselves and others to conceal from the U.S. Department of Transportation and the public in general evidence related to an alarming rate of Explorer rollovers associated with stability and handling issues of the Explorer and Firestone tread separations which were occurring outside the United States. FMC engaged in this conduct in order to avoid disclosures to the U.S. Department of Transportation and to the American public

-11-

at large of safety hazards associated with its Light Truck Sport Utility Vehicle known as the Explorer.

39.

All of FMC's conduct and patterns of conduct alleged in this Complaint demonstrate that FMC's conduct in connection with the E-350 15 passenger vans was fraudulent, willful, malicious, knowing and intentional and furthermore, its conduct was willful and reckless. This conduct demonstrates a pattern of FMC concealing from the public important information regarding stability and handling and rollover resistance information related to FMC Light Trucks including vans, pickups and SUVs.

40.

In the course of designing, developing, testing, marketing and selling the 1997 E-350 XL van, FMC failed to employ available occupant retention designs which would have increased the likelihood of occupants remaining within the vehicle in the event of a rollover.

41.

The precipitating cause of the vehicle instability during the driver steer corrections made by the driver of the subject van in this collision was due to the defects in the vehicle design.

42.

At all times pertinent, FMC had available knowledge, technology and ability to incorporate reasonable design alternatives which would have prevented the rollover under the conditions presented in this accident.

-12-

43.

In April 2001, the National Transportation Safety Administration ("NHTSA") issued a report warning that 15 passenger vans such as the FMC's 15 passenger vans, including the 1997 E-350 XL, have a rollover risk which rises dramatically as the number of passengers increases beyond 10 to nearly 3 times the rate of rollover compared to a van which is more lightly loaded. This report also noted that users of 15 passenger vans, including the model 1997 E-350 XL needed to be made aware of safety precautions which could significantly reduce the risk of rollover.

44.

It is clear from a review of the April 2001, NHTSA report that 15 passenger vans including the 1997 E-350 XL should only be operated by experienced drivers who understand and are familiar with the peculiar and dangerous handling and stability characteristics of the vehicle. The same report also notes the unsafe change in handling and rollover stability when the vehicle is loaded with passengers and their belongings.

45.

Defendant FMC was at times pertinent, and prior to November 12, 2001, aware of the April 2001, NHTSA report and were further aware of other publicly expressed concerns relating to the safety of 15 passenger vans particularly in the area of stability, handling and rollover propensity.

46.

At all times pertinent hereto, FMC failed and refused to

-13-

disclose to the public at large, information regarding the stability and handling characteristics of these vans including the 1997 E-350. This lack of disclosure was intended to induce consumers to buy, lease or rent FMC's 15 passenger vans.

### COUNT ONE: NEGLIGENCE OF FMC

47.

Plaintiffs adopt and incorporate paragraphs 1 through 46 of this complaint as if fully set out herein.

48.

Defendant FMC was negligent in the design, manufacture and marketing of the subject E-350 Super Club Wagon XL van and other substantially similar or identical vehicles in at least the following respects:

(a) selecting and carrying out design decisions as to the subject van and other substantially similar or identical vehicles including a "bustleback" body and other features which render handling and steering and rollover propensity of such vehicles dangerous and defective in foreseeable driving circumstances including those which are specifically in issue here;

(b) improper, inadequate, and incomplete testing of the subject van and other identical or substantially similar vehicles so as to fail to detect the dangerous characteristics and propensities of such vehicles;

(c) improper or inadequate monitoring of rates and incidents of rollover-related accidents, injuries and fatalities associated

-14-

with use of vehicles of the type herein in issue or identical or substantially similar vehicles;

(d)   failure to provide reasonable and adequate warnings to suppliers and users of vehicles of the type herein in issue or identical or substantially similar vehicles as to the dangerous characteristics and propensities of such vehicles.

(e)   designing, manufacturing, distributing and marketing a vehicle which was uncrashworthy.

49.

The negligence of Defendant FMC with respect to the design, manufacture and marketing of the subject van and other identical or substantially similar vehicles contributed to the injuries, damages and death of MICHAEL S. LEWIS, Plaintiffs' decedent herein.

**COUNT TWO: STRICT LIABILITY OF FMC**

50.

Plaintiffs hereby adopt and incorporate paragraphs 1 through 49 of the complaint as if fully set out herein.

51.

Defendant FMC is the designer and manufacturer of the subject 1997 E-350 Super Club Wagon XL.

52.

The subject 1997 Ford Super Club Wagon XL was unreasonably dangerous and defective in its design, manufacture and as marketed and was not merchantable nor reasonably suited for the use intended.

-15-

53.

Defendant FMC is a seller regularly engaged in the design, manufacture and marketing of motor vehicles, including the subject vehicle and the subject vehicle was expected to and did reach the consumer without substantial or significant change in condition from the time of initial manufacture and marketing by defendant.

54.

The risks of the subject vehicle which were inherent in its design; its propensity to be involved in rollover collisions; and its lack of adequate and reasonable protection for occupants greatly outweighed the utility of the vehicle's design.

55.

The defects of the subject vehicle proximately caused the death of MICHAEL S. LEWIS and the injuries and damages sustained by Plaintiffs herein.

56.

Defendant FMC is strictly liable to Plaintiffs under O.C.G.A. § 51-1-11 for the wrongful death of MICHAEL S. LEWIS and for the personal injuries to Plaintiffs' decedent and other damages sustained by Plaintiffs as set out herein and caused by the defects and inadequacies in the design and manufacture of the subject E-350 Ford Super Club Wagon XL.

### COUNT THREE: PUNITIVE CONDUCT BY FMC

57.

Plaintiffs adopt and incorporate by reference paragraphs 1 through 56 of the complaint as if fully set out herein.

-16-

58.

The conduct of Defendant FMC in designing, marketing, manufacturing and distributing the Ford Super Club Wagon was undertaken wilfully, wantonly and recklessly with conscious disregard for the consequences, thus constituting grounds for punitive damages. This conduct included, but was not limited to, the following willful acts of misconduct:

(a) Designing a fifteen passenger van, the Ford Super Club Wagon, despite full knowledge and experience regarding previous designs and other van rollovers;

(b) Totally and consciously disregarding its own extensive knowledge and experience with vehicles that have design characteristics similar to the Ford Super Club Wagon that suffered from an unreasonable propensity to roll over;

(©) Despite its own extensive knowledge of vehicle rollover prior to, and after, the production of the first Ford Super Club Wagon, Defendant Ford Motor Company embarked on a continuous campaign to disregard public safety and produce a vehicle that it knew would be, and was, involved in an unreasonably large number of rollovers that would cause death or injury;

(d) Despite Defendant FMC's extensive knowledge of rollover stability issues and its actual knowledge of a large number of rollovers involving the Ford Super Club Wagon as a safe and reliable vehicle;

(e) Intentionally concealing test data and rollover testing

-17-

results which conclusively showed the vehicle's instability and high propensity to rollover when subjected to foreseeable driving maneuvers and forces.

59.

Defendant FMC's actions showed willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which would raise the presumption of conscious indifference to consequences thereby entitling Plaintiffs to punitive damages pursuant to O.C.G.A. § 51-12-5.1. Punitive damages should, therefore, be awarded against Defendant Ford Motor Company to punish and penalize such conduct, and deter future similar conduct.

### COUNT FOUR: CLAIMS AGAINST FMC
### UNDER THE GEORGIA RICO STATUTE

60.

Plaintiffs adopt and incorporate by reference paragraphs 1 through 59 of the complaint as if fully set out herein.

61.

The conduct of Defendant FMC in designing, manufacturing, marketing, advertising, characterizing, and defending the subject vehicle and other identical or substantially similar vehicles has been and remains in patent violation of the Georgia Racketeer Influenced and Corrupt Organization Act, O.C.G.A. § 16-14-1, et seq, by reason of each and all of the following:

(a) Defendant is now and at all relevant times herein, and for a period of years, if not decades, has been fully aware of the dangerous characteristics and propensities

-18-

of the subject vehicle and other identical or substantially similar vehicles particularly with reference to their propensity for loss of control and rollover;

(b) Defendant has nonetheless followed a conscious and calculated policy and corporate practice of fraudulent concealment and denial of these dangerous characteristics and propensities for purposes including but not limited to the following:

1. Maintaining and increasing sales and use of SCW vehicles, even though such sales and use would inevitably result in widespread personal injury and needless deaths; and

2. frustrating and impeding the efforts or abilities of persons thus injured or the families of persons thus killed from becoming aware of the defective character of the SCW, or recovering fair and adequate compensation for their injuries, damages, and losses.

(©) Defendant has carried out this policy and practice of fraudulent concealment and denial by means including but not limited to each and all of the following:

1. utilization of the United States mails in furtherance of its fraudulent purposes on multiple occasions including but not limited to submission of false documents in law suits

-19-

in Georgia and to governmental agencies including particularly the National Highway Traffic Safety Administration (NHTSA);

2. utilization of communication by wire (telephone) in furtherance of its fraudulent purpose on multiple occasions including but not limited to communications by agents and employees of Defendant within and without its Office of General Counsel (OGC);

3. solicitation, subornation, and commission of multiple acts of perjury in violation of applicable state and federal law.

62.

The willful violation by Defendant FMC of the Georgia RICO Act with respect to the design, manufacture, marketing, advertising, characterizing and defending of the subject vehicle and identical and substantially similar vehicles has contributed to the injuries and damages and to the death of MICHAEL S. LEWIS complained of herein, and to the costs and difficulties associated with prosecution of this and other actions arising out of SCW rollover accidents.

## IV: LIABILITY OF BRIDGESTONE/FIRESTONE, INC. AND BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC ("The Firestone Defendants")

### COUNT ONE: NEGLIGENCE OF THE FIRESTONE DEFENDANTS

63.

The Firestone Defendants designed, manufactured, assembled,

-20-

distributed, marketed and sold the Steel Tex R 40 tire which was on the 1997 E-350 Ford Super Club Wagon XL in the right rear position at the time of the collision referenced herein. The right rear tire sustained a tread separation and failure immediately before the collision sequence referenced herein.

64.

The Firestone Defendants were negligent in at least the following respects in the design, manufacture and marketing of the subject tire which failed and separated on the subject vehicle thereby contributing to the rollover of the E-350 Van referenced herein:

(a)  negligent design or formulation of the subject tire or the components thereof;

(b)  negligent manufacture or construction of the subject tire;

(c)  negligent or inadequate testing of the tire of the type of the subject tire;

(d)  negligent or inadequate monitoring of rates and incidents of failure or separation of tires of type of the subject tires, or tires substantially similar to the subject tire, or tires utilizing the same or similar manufacturing methods or processes;

(e)  failing to provide reasonable and adequate warnings to suppliers and users of tires of the type of the subject tire or substantially similar tires as to risks and hazards associated with use of such tires or the

-21-

identification or symptoms associated with such risks or hazards.

65.

The negligence of the Firestone Defendants with respect to the design, manufacture and marketing of the subject tire contributed to the injuries, damages and to the death of MICHAEL S. LEWIS complained of herein.

**COUNT TWO: STRICT LIABILITY**

66.

The Firestone Defendants designed, manufactured, distributed and marketed the subject Firestone Steel Tex R40.

67.

The subject Firestone tire was unreasonably dangerous and defective in its design, manufacture and as marketed and was not merchantable nor reasonably suited for the use intended. The Firestone Defendants are a seller regularly engaged in the design, manufacture and marketing of motor vehicles, including the subject vehicle and the subject vehicle was expected to and did reach the consumer without substantial or significant change in condition from the time of initial manufacture and marketing by defendant.

68.

The risks of the subject Firestone tire which were inherent in its design and greatly outweighed the utility of the tire's design.

69.

The defects in the subject Firestone tire proximately caused the death of MICHAEL S. LEWIS and the injuries and damages

-22-

sustained by Plaintiffs herein.

70.

The Firestone Defendants are  strictly liable to Plaintiffs herein under O.C.G.A. § 51-1-11 for the wrongful death of MICHAEL S. LEWIS and for his personal injuries and other damages sustained by Plaintiffs as set out herein and caused by the defects and inadequacies in the design and manufacture of the subject Firestone tire.

### COUNT THREE: PUNITIVE CONDUCT BY THE FIRESTONE DEFENDANTS

71.

The conduct of The Firestone Defendants in designing, manufacturing, and marketing the subject Firestone tire, and substantially similar tires and tire types, was undertaken willfully, wantonly, recklessly and with conscious disregard for the consequences thus constituting grounds for punitive damages.

72.

The Firestone Defendants' actions show willful misconduct, wantonness, and that entire want of care which would raise the presumption of conscious indifference to consequences thereby entitling the Plaintiffs to punitive damages pursuant to O.C.G.A. § 51-12-5.1.

### V. DAMAGES FOR WRONGFUL DEATH; GENERAL AND SPECIAL DAMAGES

#### (A)   WRONGFUL DEATH OF MICHAEL S. LEWIS

73.

As a direct and proximate result of the combined, joint and several acts of negligence and recklessness committed by the

-23-

Defendants FORD MOTOR COMPANY, BRIDGESTONE/FIRESTONE, INC. and BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC, MICHAEL S. LEWIS died. At the time of his death he was 27 years old with a life expectancy of 47.8 years (Annuity Mortality Table, 1949, Ultimate).

74.

The decedent was unmarried at the time of his death. As the mother and natural guardian of the decedent's minor children, BRETT M. LEWIS and DYLAN M. LEWIS, Plaintiff PRICILLA A. LEWIS brings this action to recover the full value of the life of MICHAEL S. LEWIS on behalf of their children and to recover her children's statutory share of the full value of his life from the Defendants; similarly, Plaintiff MELISSA A. WEGNER, as the mother and natural guardian of HUNTER A. WEGNER, the minor child of the decedent brings this action to recover the full value of the life of the decedent from the Defendants on behalf of this minor child and his statutory share of the same.

(B)   PRE-IMPACT FRIGHT/SHOCK AND CONSCIOUS PAIN AND SUFFERING OF MICHAEL S. LEWIS

75.

As a direct and proximate result of the combined negligence, joint and several acts of negligence and recklessness committed by the Defendants FORD MOTOR COMPANY, BRIDGESTONE/FIRESTONE, INC., and BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC, herein as set forth above, the decedent, MICHAEL S. LEWIS did suffer pre-impact fright and conscious pain and suffering prior to his death for which his Estate is entitled to recover from the Defendants and for which the

-24-

Plaintiff PRICILLA A. LEWIS, as Administratrix of the Estate of the decedent brings this action.

### (C)   SPECIAL DAMAGES OF MICHAEL S. LEWIS

76.

As a further direct and proximate result of the joint and several negligent and reckless acts and omissions of the Defendants FORD MOTOR COMPANY, BRIDGESTONE/FIRESTONE, INC. and BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC herein as set forth above, the Estate of MICHAEL S. LEWIS incurred medical and funeral expenses. As Administratrix and personal representative of the estate of the decedent, MICHAEL S. LEWIS, Plaintiff PRICILLA A. LEWIS is entitled to recover from the Defendants medical expenses and funeral expenses incurred by the decedent's estate.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly and severally, in an amount which is authorized by law and which will fully and adequately compensate them for the wrongful death of the decedent; and for the pre-impact fright and shock, conscious pain and suffering of the decedent; for the decedent's medical, funeral and other special damages, and for other damages set out herein; for punitive damages as proven by law; for the costs of this action; for a trial by a jury; and for any and other further relief as the Court deems fair and equitable.

-25-

CATHEY & STRAIN
P.O. Box 689
Cornelia, GA 30531
(706) 778-2601

_____
DENNIS T. CATHEY
STATE BAR NO. 116600

_____
DAVID A. SLEPPY
STATE BAR NO. 652410

_____
JEFFERY S. MALCOM
STATE BAR NO. 467010

Jeffery S. Malcom, P.C.
532 East Howell Street
P.O. Box 861
Hartwell, GA 30643
(706) 376-6500

-26-

Civil Action No. **2003A-8679-1**

Date Filed **9/15/03**

|  | Superior Court | ☐ | Magistrate Court | ☐ |
|--|--|--|--|--|
|  | State Court | ☒ | Probate Court | ☐ |
|  | Juvenile Court | ☐ |  |  |

Georgia, _____ Cobb _____ COUNTY

Pricilla A. Lewis, as Administratrix of t
Estate of Michael S. Lewis; Pricilla A.
Lewis as Mother and Natural Guardian of
Brett M. Lewis and Dylan M. Lewis,
Minor Children of Decedent Michael Plaintiff
S. Lewis and Melissa A. Wegner, Mother an
Natural Guardian of Hunter A. Wegner, Min
Child of Decedent Michael S. Lewis

VS.

**Attorney's Address**

Dennis T. Cathey    Jeffery S. Malcom
David A. Sleppy    Jeffery S. Malcom, PC
Cathey & Strain    532 East Howell Street
P.O. Box 689    P.O. Box 861
Cornelia, GA 30531    Hartwell, GA 30643

Name and Address of Party to be Served.

Bridgestone/Firestone North America,Tire, Inc
Registered Agent: National Registered Agents, Inc.
3671 Venture Drive, Suite 260
Duluth, GA 30096 (Gwinnett County, GA)

Ford Motor Company; Bridgestone/Firestone
Inc. and Bridgestone/Firestone North
America Tire, LLC      *Defendant*

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant_____ _____personally with a copy
of the within action and summons.

**NOTORIOUS**

I have this day served the defendant_____ _____by leaving a
copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of_____ _____described as follows:
age, about_____years; weight_____pounds; height, about_____feet and_____inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant _PRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, LLC_ a corporation
by leaving a copy of the within action and summons with _MAGGIE FOZDINAN_ (M2A)
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said
affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the
defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST**

☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

This _07_ day of _OCT_, 20_03_.

9:50 AM

_LEE_ SC#_10_    **DEPUTY**

SHERIFF DOCKET_____ PAGE_____



# EXHIBIT / ATTACHMENT

$\mathcal{B}$

**(To be scanned in place of tab)**

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

PRICILLA A. LEWIS, As Administratrix )
of the Estate of Michael S. Lewis; )
PRICILLA A. LEWIS as Mother and )
Natural Guardian of Brett M. Lewis and )   CIVIL ACTION FILE NO:
Dylan M. Lewis, Minor Children of )   2003-A-8679-1
Decedent Michael S. Lewis and Melissa )
A. Wegner, Mother and Natural Guardian )
of Hunter A. Wegner, Minor Child of )
Decedent Michael S. Lewis, )
　 )
     Plaintiffs, )
　 )
vs. )
　 )
FORD MOTOR COMPANY; )
BRIDGESTONE/FIRESTONE, INC. )
AND BRIDGESTONE/FIRESTONE )
NORTH AMERICAN TIRE, LLC )
　 )
     Defendants. )

## ANSWER OF BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC, SUCCESSOR BY MERGER TO BRIDGESTONE/FIRESTONE, INC, AND BRIDGESTONE/FIRESTONE, INC.

COME NOW Bridgestone/Firestone North American Tire, LLC, as successor by merger to Bridgestone/Firestone, Inc., and Bridgestone/Firestone, Inc. (collectively referred to as "Firestone"), and file this answer to the complaint of Pricilla A. Lewis, as Administratrix of the Estate of Michael S. Lewis and as Mother and Natural Guardian of Brett M. Lewis and Dylan M. Lewis, Minor

Children of Decedent Michael S. Lewis, and Melissa A. Wegner, Mother and Natural Guardian of Hunter A. Wegner, Minor Child of Decedent Michael S. Lewis ("Plaintiffs"), as follows:

### FIRST DEFENSE

Plaintiffs' complaint fails to state a claim against Firestone upon which relief can be granted, and thus the complaint should be dismissed as to this defendant.

### SECOND DEFENSE

Firestone is not indebted to the plaintiffs in the sum sued for nor in any sum whatsoever.

### THIRD DEFENSE

Plaintiffs' claims are or may be barred by the doctrines of comparative and contributory negligence.

### FOURTH DEFENSE

Firestone asserts the defense of misuse of the product as to the occurrence in suit.

### FIFTH DEFENSE

The proximate cause of plaintiffs' injuries and damages were the acts or omissions of persons, firms or corporations other than Firestone in this case.

2

## SIXTH DEFENSE

Venue is improper in this action as to defendant Firestone.

## SEVENTH DEFENSE

An award of punitive damages against defendant in this case would violate this defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983.

## EIGHTH DEFENSE

Without limiting the generality of the previous defense, an award of punitive damages against defendant would violate defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, Section I, Paragraph I of the Constitution of Georgia of 1983 because (1) such an award under Georgia law is subject to no predetermined amount, such as a maximum multiple of compensatory damages or a maximum amount; (2) the standard of law in Georgia does not provide for sufficient clarity for determining the appropriateness and the approximate size of the punitive damage award; (3) the jury is not, under Georgia law, adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (4) the jury is not expressly prohibited from awarding punitive damages, or

3

determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, status and identity of the defendant; (5) the jury is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (6) the award of punitive damages is not subject to trial court and appellate judicial review for reasonableness and for the furtherance of the legitimate purposes of such damages on the basis of objective standards; (7) the award of punitive damages in this action would have an impermissible extraterritorial effect; (8) defendant Firestone had no notice of or means of ascertaining whether, or in what amount, it might be subject to a penalty of punitive damages for the conduct alleged by plaintiff in this case, which lack of notice was compounded by absence of any adequate or meaningful standards as to the kind of conduct that might subject defendant to punitive damages or as to the potential amount of such an award; (9) an award of punitive damages under Georgia law does not give cognizance to the comparability of the award to awards in other, similar cases; (10) an award of punitive damages in Georgia under Georgia's statute does not give adequate consideration to the proportionality of the punitive damages awarded to the wrong done to plaintiff;

4

and (11) no provision of Georgia law or the Georgia punitive damages scheme provides adequate procedural safeguards consistent with the criteria set forth in State Farm Mutual Automobile Insurance Co. v. Campbell, 123 S. Ct. 1513 (2003), Cooper Industries. Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S. Ct. 1678 (2001), BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1 (1990), and Matthews v. Eldridge, 424 U.S. 319 (1976) for the imposition of a punitive award.

## NINTH DEFENSE

O.C.G.A. § 51-12-5.1 violates the equal protection provisions of the Constitution of the United States and the Constitution of the State of Georgia of 1983, Article I, Section I, Paragraph II, with the result that the entirety of O.C.G.A. § 51-12-5.1 concerning punitive damages is void as unconstitutional.

## TENTH DEFENSE

O.C.G.A. § 51-12-5.1 violates the prohibition on the taking by the government of private property for public use without just compensation as set forth in the Fifth Amendment of the Constitution of the United States and made applicable to the States through the Fourteenth Amendment to the Constitution of the United States, with the result that the entirety of O.C.G.A. § 51-12-5.1 concerning punitive damages is void as unconstitutional.

5

## ELEVENTH DEFENSE

An imposition of punitive damages against defendant in this case would violate the prohibition against excessive fines of the Eighth Amendment of the United States Constitution and Article I, Section I, Paragraph XVII of the Constitution of Georgia of 1983.

## TWELFTH DEFENSE

Insofar as the punitive damage award sought by plaintiffs seeks to impose punitive damages under Georgia law for conduct in other states, the award violates: (a) defendant's rights to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983; (b) the dormant or negative commerce clause derived from Article I, Section 8, Clause 3 of the United States Constitution; (c) the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution; and (d) the requirement of the United States Constitution that a state respect the autonomy of other states within their spheres; and (e) the notion that a state has no legitimate concern in imposing punitive damages to punish a defendant for acts committed outside of the state's jurisdiction, as stated in State Farm Mutual Automobile Insurance Co. v. Campbell, 123 S. Ct. 1513 (2003), Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S. Ct.

6

1678 (2001), <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1990), and <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976).

## THIRTEENTH DEFENSE

Without limiting any previous defense, insofar as any punitive damages sought by plaintiff are awarded, such punitive damages may not exceed the sum of substantial compensatory damages that may be awarded to the plaintiffs, as to do so would violate this defendant's due process rights guaranteed by the United States Constitution and by Article I, Section I, Paragraph I of the Constitution of Georgia of 1983 as applied in <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 123 S. Ct. 1513 (2003), <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424, 121 S. Ct. 1678 (2001), <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1990), and <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976).

## FOURTEENTH DEFENSE

Without limiting any previous defense, insofar as any punitive damages sought by plaintiff are awarded, such punitive damages may not exceed the sum of substantial compensatory damages that may be awarded to the plaintiff, as to do so would violate this defendant's due process rights guaranteed by the United States

Constitution as applied in <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 123 S. Ct. 1513 (2003), <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 0.424, 121 S. Ct. 1678 (2001), <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1990), and <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976).

## FIFTEENTH DEFENSE

1.

Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 1, 2 and 3 of plaintiffs' complaint.

2.

Responding to the allegations of paragraph 4 of plaintiffs' complaint, defendant Firestone shows that Bridgestone/Firestone, Inc. was merged into Bridgestone/Firestone North American Tire, LLC. Defendant Bridgestone/Firestone North American Tire, LLC is the surviving corporation. In further response to paragraph 4 of plaintiffs' complaint, Firestone admits that Bridgestone/Firestone, Inc. was a corporation organized under the laws of the State of Ohio. Based upon the merger, all remaining allegations of paragraph 4 are denied, as pleaded.

3.

Responding to the allegations of paragraph 5 of plaintiffs' complaint, Firestone admits the allegations thereof except stating that Bridgestone/Firestone North American Tire, LLC is a limited liability corporation. Further, Firestone denies that venue is proper in this case.

4.

Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 6 and 7 of plaintiffs' complaint.

5.

With respect to paragraph 8 of plaintiffs' complaint, Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the particular vehicle movements being alleged. However, Firestone denies that any act or omission of Firestone caused or contributed to cause the vehicle movements or occurrence in suit.

6.

Responding to the allegations of paragraphs 9 - 37 of plaintiff's complaint, defendant Firestone is without knowledge or information sufficient to form a belief as to the truth thereof, but denies that any of said allegations pertain to defendant

9

Firestone and denies said allegations to the extent that they purport to allege acts or omissions of defendant Firestone.

7.

Responding to the allegations of paragraph 38 of plaintiffs' complaint, defendant Firestone is without knowledge or information sufficient to form a belief as to the truth thereof but denies that accidents or events involving Ford Explorers and Firestone tires mounted on such vehicles have any relevance to any of the events in suit and denies that any act or omission of defendant Firestone was in any way involved in the matters alleged in paragraph 38 of plaintiffs' complaint.

8.

Responding to the allegations of paragraphs 39 – 46 of plaintiffs' complaint, defendant Firestone is without knowledge or information sufficient to form a belief as to the truth thereof but denies that these allegations pertain to defendant Firestone and denies that any act or omission of defendant Firestone played any role in the matters alleged in said paragraphs.

9.

Responding to the allegations of paragraph 47 of Count One of plaintiffs' complaint, defendant Firestone incorporates herein as if fully set forth each and

10

every response made by it to the allegations of paragraphs 1 - 46 of plaintiffs' complaint.

10.

Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 48 and 49 of Count One of plaintiffs' complaint, and each and every subparagraph thereof, but denies that any act or omission of defendant Firestone played in role in or caused the occurrence in suit or was in any way involved in the matters alleged therein.

11.

Responding to the allegations of paragraph 50 of  Count Two of plaintiffs' complaint, defendant Firestone incorporates herein as if fully set forth each and every response made by it to the allegations of paragraphs 1 – 49 of plaintiffs' complaint.

12.

Responding to the allegations of paragraphs 51 – 56 of plaintiffs' complaint, defendant Firestone is without knowledge or information sufficient to form a belief as to the truth thereof, but denies that any act or omission of defendant Firestone played any role in or caused the occurrence in suit or was in any way involved in the matters alleged in these paragraphs.

13.

Responding to the allegations of paragraph 57 of Count Three of plaintiffs' complaint, defendant Firestone incorporates herein as if fully set forth each and every response made by it to the allegations of paragraphs 1 – 56 of plaintiffs' complaint.

14.

Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 58 and 59 of Count Three of plaintiffs' complaint, and each and every subparagraph thereof, but denies that any act or omission of defendant Firestone was involved in any of the matters alleged therein and denies that any act or omission of defendant Firestone caused or contributed to cause the occurrence in suit.

15.

Responding to the allegations of paragraphs 60 of Count Four of plaintiffs' complaint, defendant Firestone incorporates herein as if fully set forth each and every response made by it to the allegations of paragraphs 1 – 59 of plaintiffs' complaint.

16.

Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 61 and 62 of Count Four of plaintiffs' complaint, and each and every subparagraph thereof, but Firestone denies that any act or omission of Firestone played any role in the matters alleged therein or in the occurrence in suit.

17.

Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 of Count One against defendant Firestone but denies that any condition in the subject tire caused or contributed to cause the occurrence in suit.

18.

Defendant Firestone denies the allegations of paragraphs 64 and 65 of Count One of plaintiffs' complaint against Firestone and each and every subparagraph thereof.

19.

Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 of Count Two of plaintiffs' complaint.

20.

Defendant Firestone denies the allegations of paragraphs 67, 68, 69 and 70 of Count Two of plaintiffs' complaint.

21.

Defendant Firestone denies the allegations of paragraphs 71 and 72 of Count three of plaintiffs' complaint against Firestone.

22.

Responding to the allegations of paragraph 73 of plaintiffs' complaint, defendant Firestone denies the first sentence thereof and is without knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of said paragraph.

14

23.

Responding to the allegations of paragraph 74 of plaintiffs' complaint, defendant Firestone denies those portions of said paragraph which allege that plaintiffs are entitled to bring this action to recover the full value of the life of Michael S. Lewis or any portion thereof. Defendant Firestone is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 as to the relationships of the plaintiffs to the minor children referred to therein. Defendant Firestone is without knowledge or information sufficient to form a belief as to the marital status of the decedent, Michael S. Lewis, at the time of his death, as alleged in paragraph 74 of plaintiffs' complaint.

24.

Defendant Firestone denies the allegations of paragraphs 75 and 76 of plaintiffs' complaint.

25.

Defendant Firestone denies each and every other remaining allegation of plaintiffs' complaint and denies the prayers for relief sought by plaintiffs on page 25 of plaintiffs' complaint.

WHEREFORE, having fully answered, defendants Bridgestone/Firestone North American Tire, LLC, as successor by merger to Bridgestone/Firestone, Inc., and Bridgestone/Firestone, Inc., pray that they be henceforth discharged and relieved of all costs of court in this action.

Defendants demand a trial by a jury of twelve (12) persons, pursuant to O.C.G.A. §§ 15-12-122 and 15-12-123.

Respectfully submitted this 23rd day of October, 2003.

HOLLAND & KNIGHT LLP

Alfred B. Adams, III
Georgia Bar No. 002300
Caroline Johnson Tanner
Georgia Bar No. 392580
Dax Lopez
Georgia Bar No. 457888

2000 One Atlantic Center
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3400
(404) 817-8500
(404) 881-0470 Fax

Attorneys for Defendants Bridgestone/Firestone North American Tire, LLC, successor by merger to Bridgestone/Firestone, Inc., and Bridgestone/Firestone, Inc.

16

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing **ANSWER OF BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC, SUCCESSOR BY MERGER TO BRIDGESTONE/FIRESTONE, INC, AND BRIDGESTONE/ FIRESTONE, INC.** on all parties to this action, or their attorney of record, by placing it in the United States Mail, first class postage prepaid, and properly addressed as follows:

Dennis T. Cathey, Esq.
David A. Sleppy, Esq.
Cathey & Strain
P.O. Box 689
Cornelia, Georgia 30531

F. Faison Middleton, IV, Esq.
Jeremy M. Moeser, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308

Jeffery S. Malcom, Esq.
Jeffery S. Malcom, P.C.
532 East Howell Street
P.O. Box 861
Hartwell, Georgia 30643

Attorneys for Defendant Ford
Motor Company

Attorneys for Plaintiffs

This 23rd day of October , 2003.

_____
Of Counsel for Defendants
Bridgestone/Firestone
North American Tire, LLC,
Successor by Merger to Bridgestone/
Firestone, Inc., and Bridgestone/
Firestone, Inc.

# 1306905_v1

17